**Anne Hesse MORAN, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 94–C–700–H.**

United States District Court,
N.D. Oklahoma.

March 19, 1996.

F. Eugene Hough, Hough Korens & Wantland, Tulsa, OK, for plaintiff.

Anne Hesse Moran, Tulsa, OK, pro se.

James J. Long, Phyllis J. Gervasio, U.S. Department of Justice, Tax Division, Washington, DC, for defendant.

*ORDER*

HOLMES, District Judge.

This matter comes before the Court on a Motion for Summary Judgment by Plaintiff Anne Hesse Moran (Docket # 8) and a Cross–Motion for Summary Judgment by Defendant United States of America (Docket # 10). For the reasons set forth herein, Plaintiff's motion is hereby granted and Defendant's motion is hereby denied.

**I.**

For purposes of the instant motions, the Court adopts the admissions and stipulations of fact set forth in the agreed upon proposed Pretrial Order submitted to the Court on April 3, 1995:

1. Plaintiff filed her original return for the tax year 1985 on August 15, 1986, and filed an amended return on April 15, 1987, for the tax year 1985.

2. On May 1, 1987, Plaintiff hand-delivered personal check # 338 to the office of the Internal Revenue Service (the "Service") in Tulsa, Oklahoma.

3. On May 7, 1987, Plaintiff's bank returned the personal check to the Service marked uncollected funds.

4. On or about May 8, 1987, the Austin Service Center had the personal check in its possession.

5. On May 22, 1987, the Service issued the erroneous refund to Plaintiff in the amount of $13,905.48. The erroneous refund check stated it was for a "75 TAX REF".

6. On July 27, 1987, eleven days after the cashier's check for the amended return liability was received by the Service, the Austin Service Center generated a Statement of Change to Your Account notice for taxable year 1985 in the amount of $29,723.53.

7. The July 27, 1987, notice reflected the tax assessment of the same date.

8. Plaintiff's CPA sent a letter to the Austin Service Center dated August 5, 1987,

seeking an explanation concerning the tax debt for 1985, and the Service did not respond.

9. The Service's codes on the back of the cashier's check state that the funds were applied on July 16, 1987, for a Form 1040X, amended individual return, for taxable year 1985.

10. The Document Locator Number located in the upper right corner of Form 2287 matches the Document Locator Number on the back of the cashiers check, and the amount indicated as paid on Form 2287 is the same as the cashiers check.

11. Plaintiff submitted her Administrative Appeal of Federal Tax Lien on February 6, 1991, which was denied by the Oklahoma City District.

12. On April 8, 1991, the Service issued a Notice of Levy on Heartland Federal Savings and Loan, and confiscated $2,132.37 from Plaintiff's bank account.

13. The Service issued a Notice of Levy dated November 22, 1991, on the Keystone Resource Investment Center, Keystone Liquid Trust, and confiscated $23,033.97 from liquidated securities.

14. On June 18, 1992, Plaintiff filed an Administrative Claim for Refund and Demand for Hearing with the Oklahoma City District. On July 23, 1992, the District Director denied the administrative claim for refund.

15. The Department of Treasury/Internal Revenue Service's Document 6209 manual is used as a reference guide for the Service's Automatic Data Processing and Integrated Data Retrieval System.

The Court further accepts the following stipulations of record agreed to by the parties at a hearing in this matter on April 6, 1995:

1. The parties agree that Plaintiff would testify that she mailed the $13,872 cashier's check together with a letter or note saying this cashier's check was to replace the personal check. These were mailed contemporaneously in the same envelope with proper postage and addressed to the Austin Service Center.

2. The parties agree that the Service would testify that it does not have a file stamped copy of that letter or note in the administrative file.

## II.

Summary judgment is appropriate where "there is no genuine issue as to any material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Windon Third Oil & Gas Drilling Partnership v. Federal Deposit Insurance Corp.*, 805 F.2d 342, 345 (10th Cir.1986), *cert. denied*, 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987), and "the moving party is entitled to judgment as a matter of law," Fed.R.Civ.P. 56(c). In *Celotex*, the Supreme Court stated:

> [t]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

477 U.S. at 322, 106 S.Ct. at 2552.

A party opposing a properly supported motion for summary judgment must offer evidence, in admissible form, of specific facts, Fed.R.Civ.P. 56(e), sufficient to raise a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) ("The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. at 2510.

Summary judgment is only appropriate if "there is [not] sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 250, 106 S.Ct. at 2511. The Supreme Court stated:

> [t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Id.* at 252, 106 S.Ct. at 2512. Thus, to defeat a summary judgment motion, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511 ("There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." (citations omitted)).

In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. *Boren v. Southwestern Bell Tel. Co.,* 933 F.2d 891, 892 (10th Cir. 1991).

### III.

Each of the parties offers a markedly different characterization of the facts in this case. Plaintiff summarizes her views as follows:

> The issues in the instant proceeding are remarkably simple. Moran's pleadings and evidentiary submissions prove that she directed the application of funds to her 1985 amended return liability, and the Internal Revenue Service ("IRS") did apply the funds to that tax period as directed. Moran's tax liability for the 1985 amended return was fully paid.
>
> Due to a posting error, the IRS erroneously issued a refund check to Moran, indicating it was for the 1975 tax period and, once it discovered its error, unlawfully recovered the erroneous refund and interest thereon by improperly using tax collection procedures. Notwithstanding the fact that Congress provided the IRS with two avenues to recover erroneous refunds, the IRS failed to pursue these statutory remedies.

Pl.'s Resp. to Def.'s Mot. for Summ. J. at 1. By contrast, Defendant argues in effect that its actions were entirely within the collection powers granted to the United States for an outstanding tax liability under applicable law.

The Court believes that the pivotal fact in this action was set forth at paragraph 9 of the proposed Pretrial Order, which states in its entirety as follows:

> (9) The IRS' codes on the back of the cashier's check state that the funds were applied on July 16, 1987, for a Form 1040X, amended individual return, for the tax year 1985.

The proposed Pretrial Order further states, "The IRS' documents show that the cashier's check was applied to the tax liability, as Plaintiff directed, not to the erroneous refund." Pretrial Order at 4.

As the analysis below makes clear, this fact renders unavailing each of the arguments advanced by the United States in this case. Therefore, summary judgment in favor of the Plaintiff is appropriate.

In its brief, Defendant advances three arguments. First, the United States argues that Plaintiff's Complaint fails to state a claim upon which relief can be granted. In support of this argument, the United States asserts that "the funds alleged to have been erroneously or illegally assessed or collected by the Service in 1991 were applied against a tax liability shown on Plaintiff's 1985 amended income tax return." This assertion, however, is simply untrue. To the contrary, the original payment "was applied to the tax liability, as Plaintiff directed, *not the erroneous refund.*" Pretrial Order at 4 (emphasis added). Since the funds confiscated by the Service in 1991 were collected in connection with the erroneous refund payment, and not the 1985 tax liability, Defendant's first argument is without merit.

■ Second, the United States argues that Plaintiff's Complaint is barred by the statute of limitations. In support of this argument, Defendant cites Section 6511, which provides in pertinent part:

> (a) PERIOD OF LIMITATION ON FILING CLAIM.—Claim for credit or refund

of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within three years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid.

IRC § 6511. Br. in Supp. of Def.'s Mot. for Summ. J. at 10. This provision of the Code, however, is inapposite. As emphasized above, Plaintiff's original payment in 1987 was applied to the outstanding tax liability for taxable year 1985, *not* to the erroneous tax refund. Thus, the taxpayer in the instant case does not seek a "claim for credit or refund of an overpayment of any tax." Rather, Plaintiff seeks the return of funds confiscated by the United States to repay an erroneous refund payment made to the taxpayer by the United States nearly four years earlier. Therefore, the statute of limitations contained in Section 6511 does not bar the present action.

■ Finally, the United States argues that it has a common law right to offset an erroneous refund made to a taxpayer. This assertion also fails. It is settled law[1] that in the case of an erroneous refund, the Service must follow the procedures set forth in either IRC § 6532(b)[2] or IRC § 7405.[3] *See United States v. C & R Investments, Inc.,* 404 F.2d 314, 315 (10th Cir.1968). Having failed to comply with the provisions of these statutes, the government is not entitled at this time to rearrange the facts of this case for the purpose of converting its actions into the collection of an unpaid tax liability. Accordingly, the Defendant's claim to a right of offset is without merit.

## IV.

■ Clearly, Defendant confiscated Plaintiff's funds in 1991 to reimburse the United States for an erroneous refund payment made in 1987, not to satisfy any outstanding tax liability for taxable year 1985. These actions were taken without legal authority. As noted above, the proper course, routinely pursued by the Service in securing the return of erroneous tax refunds, is pursuant to the authority of Sections 6532(b) and 7405(b) of the Code. The statute of limitations, however, has expired with respect to these lawful avenues for collection of an erroneous refund. *See* IRC § 6532(b). Accordingly, the United States is prohibited from pursuing the erroneous refund payment, and the funds confiscated by the United States in 1991 in connection with such payment must be returned. *See, e.g., Radinsky v. United States,* 622 F.Supp. 412 (D.Colo.1985).

The Court recognizes that this ruling permits an individual to keep monies sent to her by the government notwithstanding the fact she has no legitimate claim of right to such funds except that, under the law, the United States cannot command their return after the applicable statute of limitations has expired. Clearly, this is not a satisfying result.

However, the Court offers two observations for those who share the Court's discomfort with the outcome in this case. First, the

1. Section 6514(a)(3) of the Code provides: "For procedures by the United States to recover erroneous refunds, see sections 6532(b) and 7405."

2. Section 6532(b) provides in part as follows:

   SUITS BY UNITED STATES FOR RECOVERY OF ERRONEOUS REFUNDS.—Recovery of an erroneous refund by suit under section 7405 shall be allowed only if such suit is begun within 2 years after the making of such refund, except that such suit may be brought at any time within 5 years from the making of the refund if it appears that any part of the refund was induced by fraud or misrepresentation of a material fact.

3. Section 7405 provides in its entirety as follows:

   (a) REFUNDS AFTER LIMITATION PERIOD.—Any portion of a tax imposed by this title, refund of which is erroneously made, within the meaning of section 6514, may be recovered by civil action brought in the name of the United States.
   (b) REFUNDS OTHERWISE ERRONEOUS.—Any portion of a tax imposed by this title which has been erroneously refunded (if such refund would not be considered as erroneous under section 6514) may be recovered by civil action brought in the name of the United States.
   (c) INTEREST.—For provision relating to interest on erroneous refunds, see section 6602.
   (d) PERIODS OF LIMITATIONS.—For periods of limitations on actions under this section, see section 6532(b).

collection power of the United States is great and has the capacity to do enormous harm to any individual or business taxpayer. Therefore, strict adherence to the restrictions contained in the law is not only advisable, but mandatory.

Second, when faced with a claim by the Service for delinquent taxes, which carries with it a threat that the awesome collection power of the United States will be invoked, a taxpayer must be able to open a constructive dialogue with the Service in an effort to resolve disputes to the parties' mutual satisfaction. In this case, on July 27, 1987 the Austin Service Center sent Plaintiff a "Statement of Change to Your Account" notice for the 1985 taxable year in the amount of $29,-723.53. Plaintiff's CPA replied with a letter to the Austin Service Center dated August 5, 1987, seeking an explanation. The Service did not respond to this letter. If the Service had responded to Plaintiff's communication and thereby opened the kind of dialogue that every taxpayer deserves, the current legal action would have been unnecessary.

In summary, Plaintiff's Motion for Summary Judgment (Docket # 8) is hereby granted and Defendant's Cross–Motion for Summary Judgment (Docket # 10) is hereby denied.

IT IS SO ORDERED.

